# State *v.* Towery *et al.*

## Habeas Corpus Proceedings.

1. *Habeas corpus; the statute giving the State authority to appeal constitutional.*—The statute giving the State the right to appeal from a judgment or order in certain *habeas corpus* proceedings, where the petitioner is discharged or admitted to bail (Code, sec. 4314), is constitutional and valid.

2. *Same; when order admitting petitioner to bail will not be reversed.*—In a *habeas corpus* proceeding for the purpose of securing bail, where there is conflicting evidence as to whether or not the petitioner is guilty of murder in the first degree, as charged in the indictment, the order of the Judge in admitting the petitioner to bail will not be reversed unless it appears from the record that his action was manifestly and clearly erroneous.

APPEAL from an order of the Probate Judge of Madison County.

Heard before Hon. W. T. LAWLER.

This was a *habeas corpus* proceeding instituted by the appellees, Fint Towery and Dalton Towery, for the purpose of being admitted to bail. They were imprisoned upon a warrant issued upon an indictment charging them with murder in the first degree. The appeal is taken by the State of Alabama from an order of the Probate Judge of Madison County, admitting the petitioners to bail in the sum of $2,500 each, which order was made after a hearing by the probate Judge of the evidence introduced before him.

MASSEY WILSON, Attorney-General, for the State, cited; *Reese v. State,* 135 Ala. 13; *Scales v. State,* 96 Ala. 69; *Wilkins v. State,* 98 Ala. 1; *Jimmerson v. State,* 133 Ala. 18; *Sanders v. State,* 134 Ala. 74; *Johnson v. State,* 136 Ala. 76; *Sherrill v. State,* 138 Ala. 3; *Jarvis v. State,* 138 Ala. 17.

[State v. Towery *et al.*]

LANIER & PRIDE and COOPER & FOSTER, *contra.*—The statute authorizing appeals by the State in *habeas corpus* proceedings is unconstitutional and void. Its first appearance is in the Code of 1896, and it is predicated upon no pre-existing statute (Code, § 4314; Constitution of 1875, Art. 4, §§ 19 and 46; *Ex parte Thomas,* 113 Ala. 1.

SIMPSON, J.—It is the settled law of this State that the Code of Alabama, adopted as was the present Code of 1896, is not a mere compilation of the laws previously existing, but is a body of laws, duly enacted, so that laws, which previously existed, ceased to be law when omitted from said Code, and additions, which appear therein, become the law from the approval of the Act adopting the Code.—*Dew v. Cunningham,* 28 Ala. 467; *Hoover v. State,* 63 Ala. 30; *Ex parte Thomas,* 113 Ala. 1; *Builders' & Painters' Supply Co. v. Lucas & Co.,* 119 Ala. 202, 210.

Not only is it true that Art. IV, Sec. 46, of the Constitution of 1875, does not prohibit the legislature from doing more than is therein required to be done in regard to getting out a new Code, yet the word "revision" therein used suggests that such changes as are admissible are within the purview of the section.

Definition 3d in Webster's International Dictionary of the word *revise,* is "To review, alter or amend; as to revise statutes."

While it is true, as suggested by counsel for appellee, that Sec. 11, of Act 1894-5 p. 1001, requires the commissioner to submit to the governor "Such bills as he may deem necessary;" yet that provision relates only to those matters "Which he cannot embrace in the Code as hereinbefore provided." And section 3 required him to submit a "Statement showing all the changes he shall have made in the phraseology of all the acts and laws codified by him, *including additions thereto.*" This was done—the whole matter was referred to a committee which carefully examined the proposed Code, comparing section by section, with the amendments and additions suggested, reported on the same and the Act was passed according to the requirements of the Constitution. So the section

4s

in question (§ 4314 of the Code of 1896) is the law of Alabama, unless subject to other objections.

. It is next insisted that this section is violative of § 18 of the Bill of Rights—Constitution of 1875—that "The privilege of the writ of *Habeas Corpus* shall not be suspended."

The history of this important provision of our Constitution shows that the writ was granted in order to enable the citizen, who was restrained of his liberty, to have a speedy investigation into the cause of his detention and to secure his release, unless he was lawfully detained.

The "Suspension" of the writ which is prohibited means the denial to the citizen of the rights to demand an investigation into the cause of his detention. When this right is accorded to him, all that he has a right to demand is that his case be investigated, according to the usual mode of procedure in courts of justice, and that "Justice shall be administered, without sale, denial or delay."—Const. Ala. Art. I, Sec. 13.

In the absence of statutory provisions, a judgment on *habeas corpus* proceedings, either discharging or remanding the prisoner, cannot be reviewed on appeal.—Church on Habeas Corpus, (2d. ed.) § 386a, p. 572.

It is also true that, according to statutory provisions and the practice generally, both in England and this country, the defendant has either the right to apply successively to different courts for the writ, or the right of appeal; and as a general rule, no right of appeal is given to the State.

It has been decided in England that the government cannot appeal from the order discharging the prisoner, but it is placed strictly on the failure of the statute to provide for it, and Lord Brammell, in the House of Lords, expressed the opinion that such a law "Would be reasonable."—*Cox v. Hakes,* 15 App. Cases, 506, 523.

It is true also that some courts express the opinion that "The writ would be shorn of its advantages * * * if a party can be compelled to undergo the delay necessarily attendant upon an appeal to the Supreme Court."—*State v. Kirkpatrick,* 54 Iowa 373, 375; *McFarland v. Johnson,* 27 Texas 105, 109.

But these cases were merely discussing the question as to whether, under. the general statute of appeals, an appeal could have been taken from an order. of *habeas corpus* proceedings discharging the prisoner.

On the other hand, it has been held by high authority that, even under a general law providing for appeals generally, the officer, from whose custody the relator was improperly discharged, could have the matter reviewed by writ of *certiorari* or by appeal to the Supreme Court.—*Doyle v. Commonwealth,* 107 Penn. St. 20, 26; *State v. Bucham,* 29 Minn. 462; *State v. Richardson,* 34 Minn. 115; *State v. Hayden,* 35 Minn. 283.

In a case involving the constitutional guarantee of administering justice without delay, the Supreme Court of Kentucky says: "Delays growing out of the established mode of proceeding, which has been so established by law, equally for the protection of the accused and to accomplish the design of the scheme of laws, are evils necessarily attendant upon all human systems of jurisprudence." "By a speedy trial is intended a trial conducted according to fixed rules    *    *    *    free from vexatious, capricious and oppressive delays."—*Nixon v. State,* 41 Am. Dec. 601, 602.

And our own Court has said that "The accused is not entitled to discharge by reason of *any delay made necessary by the law itself,*" and "The right of a speedy trial does not operate to deprive the State of a reasonable opportunity of prosecuting criminals."—*Ex parte State, in re Tate,* 76 Ala. 482, 484.

In the case now under consideration the Legislature has been careful to provide for an appeal by the State only in cases where the person in custody under a charge or conviction for crime, or for extradition, is discharged; or where he is under an indictment charging him with a, capital offense and is admitted to bail, and gives him the right to bail, pending appeal, in all but capital cases. The appeal is taken to this Court where it becomes a preferred case. In a case like this, where the grand jury has investigated and deliberately charged the prisoner with the commission of a capital felony, it certainly is not an infringement of his constitutional rights

if the State reserves the right to have the matter examined by the Supreme Court, before giving the prisoner his liberty.

As to the merits of the case, we do not desire to enter into a discussion of the testimony, which might have an undue influence in the trial of the case.

There is conflict in the testimony, and the judge who tried the case had the advantage of hearing the oral testimony, and this Court has, in a number of cases, pursued the policy of not reversing the action of the judge in such matters, unless it appears from the record that his action was manifestly and clearly erroneous. We cannot affirm that as to the bail allowed in this case, and the action of the judge is

Affirmed.

McCLELLAN, C. J., TYSON and ANDERSON, J.J., concurring.